IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FARM BUREAU GENERAL
INSURANCE CO. OF MICHIGAN,

      Plaintiff,

                                     **Case No. 2:20-cv-2523**

      v.                                **JUDGE EDMUND A. SARGUS, JR.**
                                           **Magistrate Judge Kimberly A. Jolson**

SCHNEIDER NATIONAL CARRIERS,
*et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Schneider National Carriers, Inc. and Defendant Rodney Karl's Joint Motion to Dismiss. (ECF No. 10.) Plaintiff Farm Bureau General Insurance Co. filed a response in opposition, and Defendants replied. (ECF Nos. 12, 17.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Joint Motion to Dismiss.

## I. Background

This case is a subrogation action arising out of an automobile accident in Morrow County, Ohio. (Compl. ¶¶ 8, 19, ECF No. 1.) Plaintiff Farm Bureau General Insurance Co. of Michigan ("Farm Bureau") insured Michigan resident Gregory Cassels. (*Id.* ¶¶ 1, 8, 13.) On May 1, 2018, Cassels was driving northbound on state route 309 in Morrow County, Ohio when he pulled off to the shoulder of the two-lane highway and exited his vehicle to remove a roll of carpet obstructing the roadway. (*Id.* ¶ 9.) Defendant Rodney Karl, an Ohio resident, was also driving northbound operating a semitruck in the course of his employment with Defendant Schneider National

Carriers, Inc. ("Schneider National"). (*Id.* ¶¶ 2–3, 10.) Karl noticed Cassels attempting to move

the roll of carpet from the roadway, stopped his truck, and got out to assist Cassels. (*Id.* ¶ 10.)

Karl allegedly did "not pull over to the side, put on his flashers, set out warning triangles, or

otherwise properly indicate an ongoing emergency." (*Id.*)

After Karl exited his semitruck to assist Cassels, Defendant Glen Koons, an Ohio resident,

came up behind Karl's stopped truck as he traveled northbound. (*Id.* ¶ 11.) Koons drove around

Karl's truck onto the right shoulder of the road to pass the truck. (*Id.*) When Koons passed the

truck, he struck Cassels, who was on foot on the shoulder of the road at the time. (*Id.*)

At the time of the accident, Farm Bureau insured Cassels against personal injuries such as

the ones he sustained during the accident. (*Id.* ¶ 12.) As a result of those injuries, Farm Bureau

has paid "approximately $771,000 for medical treatment and related expenses on behalf of Mr.

Cassels, with future payments anticipated." (*Id.*) Farm Bureau states that, "under its policy and

by operation of law," it is subrogated to Cassels's right to recover against those legally responsible

for his injuries. (*Id.* ¶ 13.) Farm Bureau seeks damages in the amount of "$771,000 plus future

subrogated payments, in an amount to be determined at trial." (*Id.* at Prayer for Relief.)

Accordingly, Farm Bureau brings negligence claims against Defendants Karl and Koons.

(*Id.* ¶¶ 15–16.) Farm Bureau also brings claims against Defendant Schneider National. Farm

Bureau claims that Schneider National is vicariously liable for the acts and omissions of Karl

because he was working in the course of his employment at the time of the accident. (*Id.* ¶ 18.)

Farm Bureau further claims that Schneider National was negligent by "failing to properly train

and/or supervise Mr. Karl as to how to pull his truck off the road (vs. stop in the middle of it), and

as to how to properly signal that his truck is stopped." (*Id.* ¶¶ 15–16.)

Prior to Farm Bureau filing this lawsuit on May 18, 2020, Cassels initially filed suit in the Common Pleas Court of Richland County, Ohio on March 18, 2019 alleging negligence against Karl, Koons, Schneider National, and a claim for uninsured motorists coverage against Farm Bureau.  (Defs.' Mot. to Dismiss, Ex. 2, ECF No. 10-3.)  Cassels voluntarily dismissed Farm Bureau without prejudice from that action and eventually dismissed the action altogether.  (*Id.* at 2, Ex. 4, ECF No. 10-5.)  After Cassel dismissed the claims against Farm Bureau in Ohio state court, Cassel sued Farm Bureau in Michigan state court seeking uninsured motorists coverage and a declaratory judgment that Farm Bureau failed to pay some of the personal injury protection benefits owed under Cassels's policy with Farm Bureau.  (*Id.*, Ex. 5, ECF No. 10-6.)  The parties submit that the Michigan state-court action between Cassels and Farm Bureau remains ongoing. (*Id.* at 2–3; Defs.' Reply in Support, Ex. 1, ECF No. 17-1.)

In this case, Defendants Karl and Schneider National (collectively, "Defendants") now jointly move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Schneider National also moves to dismiss Farm Bureau's negligent training and supervision claim under Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

Rule 12(b)(1) challenges the Court's subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter jurisdiction challenges: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). When a motion "attacks the factual basis for jurisdiction," as Defendants' motion does here, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).  The

plaintiff has the burden of proving subject-matter jurisdiction when jurisdiction is challenged under Rule 12(b)(1). *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted). "In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, [and] (3) public documents[.]" *Overall v. Ascension*, 23 F. Supp. 3d 816, 824 (E.D. Mich. 2014) (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

### III. Analysis

Defendants first argue under Rule 12(b)(1) that Farm Bureau's subrogation claim is not ripe for adjudication because it is actively contesting Cassels's entitlement to benefits under the policy in Michigan state court.[1] (Defs.' Mot. at 4.) Defendants next argue under that Farm Bureau lacks standing to sue under Michigan's make-whole rule, Michigan's personal injury protection statute, and the language of Farm Bureau's policy with its insured. (*Id.* at 6.) Finally, Defendant

---

[1] The Court must first address Defendants' 12(b)(1) motion because the Court has no power to consider a Rule 12(b)(6) motion if it lacks subject-matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Schneider National moves under Rule 12(b)(6) to dismiss Farm Bureau's claim for negligent training and supervision. (*Id.* at 12.) Farm Bureau has standing to pursue this subrogation action, but the Court agrees with Schneider National that dismissal of Farm Bureau's negligent training and supervision claim is warranted.

### A. Ripeness and Standing

#### 1. Ripeness under Article III.

Defendants first argue that Farm Bureau lacks standing under Article III of the Constitution to seek "future subrogated payments" under the doctrine of ripeness. (*Id.* at 5.) Defendants submit that Farm Bureau seeks to recover future payments that have not yet come to pass, and may never come to pass, because Farm Bureau is contesting whether it owes those payments to its insured in Michigan state court. (*Id.*)

Farm Bureau responds that its subrogation claim is ripe because it has already paid $771,000 to Cassels under the policy. (Pls.' Resp. in Opp'n at 11, ECF No. 12.) It argues that the only damages it seeks in this action are the benefits it has already paid Cassels. (*Id.*) Farm Bureau states that "disputes linger between Farm Bureau and Mr. Cassels as to additional damages beyond those that it has paid already," but that Farm Bureau's Complaint does not seek any of those damages. (*Id.* at 11–12.)

The federal judicial power only extends to "Cases" and "Controversies" under Article III of the Constitution. U.S. Const. art. III, § 2. Pursuant to Article III's limitations, a claim is not "amenable to . . . the judicial process when it is filed too early (making it unripe)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (internal citation omitted). "The ripeness doctrine serves to 'avoid[ ] . . . premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings." *Id.*

(citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). In assessing whether a claim is ripe for judicial resolution, courts look at two things: "(1) is the claim 'fit . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Id.* (citations omitted).

This case is ripe under Article III. Plaintiff Farm Bureau has already paid $771,000 to Cassels, its insured, as a result of injuries Cassels sustained in the accident. Thus, if Farm Bureau is subrogated to Cassels's right to recover against the alleged tortfeasors—which is a different question than ripeness—Farm Bureau's claims against Defendants in this action are ripe. The insured has been injured, the insurer has paid out under the policy, and the insurer now seeks to recover from the alleged tortfeasors only those damages it has already paid to its insured. Farm Bureau makes clear that it is not seeking damages from Defendants beyond those it has already paid under the policy. (Pls.' Resp. at 11.) Indeed, Farm Bureau is only subrogated to its insured's right to recover damages up to the amount of benefits Farm Bureau has actually paid. *See, e.g.*, *Citizens Ins. Co. of Am. v. Am. Cmty. Mut. Ins. Co.*, 495 N.W.2d 798, 799 (Mich. Ct. App. 1992) ("the subrogee, upon paying an obligation owed to the subrogor as the primary responsibility of a third party, is substituted in the place of the subrogor, thereby attaining the same and no greater rights to recover against the third party."). This claim therefore concerns a concrete factual dispute that has already come to pass and there is no need to withhold judicial consideration.

### 2. The "make-whole" doctrine.

Defendants next argue that the "make-whole" doctrine prevents Farm Bureau from recovering from them until after it has fully compensated Cassels under the insurance policy. (Defs.' Mot. at 6.) As the Ninth Circuit has explained, as a matter of federal common law in the

ERISA context, the "make-whole" rule is a rule of interpretation that, "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1394 (9th Cir. 1995) (citing *Fields v. Farmers Ins. Co.*, 18 F.3d 831, 835 (10th Cir. 1994)). Defendants claim that Farm Bureau has not fully compensated Cassels because Cassels is suing Farm Bureau for additional benefits in Michigan state court, which Farm Bureau contests. (Defs.' Mot. at 6.)  According to Defendants, Farm Bureau cannot recover from them until it pays out any additional benefits it might owe to Cassels as a result of the Michigan state-court litigation.

Citing to two cases from the Michigan Supreme Court, Defendants claim that the make-whole rule applies under Michigan law and should bar Farm Bureau's claims until its suit with Cassels is resolved.[2] *Washtenaw Mut. Fire Ins. Co. v. Budd*, 175 N.W. 231, 232 (Mich. 1919); *Union Ins. Soc. of Canton v. Consol. Ice Co.*, 245 N.W. 563 (Mich. 1932).  Those cases dealt with an insurer's right to be subrogated to any excess the insured recovers over the loss sustained. *Budd*, 175 N.W. at 232.  They stand for the unremarkable proposition that "if the total amount received by an insured from the insurer and the wrongdoer together, after deducting attorney's fees and costs, does not exceed the value of the property destroyed, the insurer is not entitled to subrogation

---

[2] While the accident giving rise to this case occurred in Ohio, Michigan law applies to determine the rights between Farm Bureau (a Michigan insurance company) and Cassels (a Michigan resident) under a Michigan insurance policy. *See, e.g.*, Woodling, 2014 WL 2943068, at *2 ("Michigan law should apply to determine the underlying relationship between [the insurer] and its insured[.]"); *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 214 (Ohio 2001) ("Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules of Sections 187 and 188 of the [Restatement (Second) of Conflict of Laws.")

against the insured for the judgment recovered against the wrongdoer."  14 Mich. Civ. Jur. Insurance § 483 (citing *Budd*, 175 N.W. at 232; *Consol. Ice Co.*, 245 N.W. at 564).

The make-whole rule, as the Michigan Supreme Court has applied it in the cases discussed above, does not bar Farm Bureau's claims in this case.  In those cases, an insurer sought to recover directly from the insured after the insured recovered on the policy and from the wrongdoer.  *Budd*, 175 N.W. at 232; *Consol. Ice Co.*, 245 N.W. at 564.  This case concerns an insurer seeking, as a subrogee, to recover against alleged third-party tortfeasors when its insured elected not to pursue tort claims against those alleged tortfeasors.  That Farm Bureau's insured, Cassels, is seeking additional benefits under the policy in a different suit against Farm Bureau does not bar Farm Bureau from subrogating against the alleged tortfeasors to recover damages in an amount already paid to Cassels under the policy. *See State Auto Ins. Companies v. Velazquez*, 703 N.W.2d 223, 225 (Mich. Ct. App. 2005) ("Plaintiff's right of subrogation regarding the PIP benefits accrued upon payment of PIP benefits to its insured.").

Defendants claim that *Certain Underwriters at Lloyds v. Woodling*, an Ohio case, is directly on point.  2014 WL 2943068 (Ohio Ct. App. 2014).  But that case does not address the make-whole rule.  In *Woodling*, the insurer brought an action for reimbursement in Ohio state court against its insured while the insured simultaneously pursued claims in Michigan state court against the insurer and the alleged third-party tortfeasors.  *Id.* at *4.  The appellate court affirmed the trial court's holding that, under Michigan's statutory scheme, a Michigan insurance company "could not seek reimbursement directly against [a tortfeasor] in a separate action in Ohio while its insured [ ] sought compensation in his tort action brought in Michigan [against the tortfeasor and the insurance company]." *Id.*  In this case, Farm Bureau's insured is not pursuing recovery against

8

the alleged tortfeasors in a separate action.  Thus, *Woodling* is inapposite.  The make-whole rule

does not bar Farm Bureau's claims here.

### 3.  Right to subrogation under the insurance policy and Michigan law.

Finally, Defendants argue that Farm Bureau lacks standing to pursue claims as its insured's

subrogee.  They argue that Michigan's personal injury protection statute does not permit insurers

to subrogate directly against third-party tortfeasors and that Farm Bureau's policy with its insured

does not permit subrogation.  (Defs.' Mot. at 8, 11.)  Farm Bureau rejects Defendants' arguments,

asserting that Michigan's insurance statute does not bar Farm Bureau from pursuing recovery

through subrogation and that the policy explicitly provides a right to subrogation.  (Pls.' Resp. at

13–17.)  The Court agrees with Farm Bureau.

### a.  Michigan's no-fault insurance statute.

This dispute requires an explanation of Michigan insurance law and the differences

between reimbursement and subrogation.[3]  Michigan has a no-fault insurance scheme, meaning

that a Michigan insurer must pay to its insured "[p]ersonal protection insurance benefits . . . without

regard to fault" when the insured suffers accidental bodily injury from a motor vehicle accident.

Mich. Comp. Laws § 500.3105(2).  Personal protection benefits ("PIP benefits") include

"reasonable charges incurred for reasonably necessary products, services and accommodations for

an injured person's care, recovery, or rehabilitation." *Id.* § 500.3107(a).  Persons covered by the

statute are not subject to ordinary tort liability.  Rather, a person only "remains subject to tort

liability for noneconomic loss . . . if the injured person has suffered death, serious impairment of

body function, or permanent serious disfigurement." *Id.* § 500.3135(1).  Out-of-state residents

---

[3] As discussed in Footnote 2, *supra*, Michigan law applies to determine the contractual rights between Farm Bureau and its insured.

who do not have a Michigan no-fault insurance policy are not protected by the statute's tort immunities. *Velazquez*, 703 N.W.2d at 226.

Relevant here, Michigan's no-fault statute provides a statutory right to "reimbursement for personal protection insurance benefits paid . . . if recovery is realized on a tort claim arising from an accident that occurred outside this state[.]" Mich. Comp. Laws § 500.3116(2). "Reimbursement" means that whenever "an insured elects to sue the tortfeasor and effects a recovery, he must repay his insurer for the benefits he has received from the insurer." *Murray v. Ferris*, 253 N.W.2d 365, 367 (Mich. Ct. App. 1977).

But Michigan's no-fault insurance statute is silent on subrogation. "Subrogation" means "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Steinmann v. Dillon*, 670 N.W.2d 249, 252 (Mich. Ct. App. 2003) (citing Black's Law Dictionary (7th ed.)). A "subrogee"—in this case, Plaintiff Farm Bureau—"stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor." *Id.* (citation omitted).

Defendants here maintain that, because the no-fault statute expressly creates a right to reimbursement only after a "recovery is realized on a tort claim" from an out-of-state accident— but does not mention subrogation—reimbursement following a tort recovery is the exclusive method an insurer can recoup PIP benefits paid to an insured. (Defs.' Mot. at 7–8.) Defendants argue that Farm Bureau "does not, and will never, have a cause of action against Defendants. It must seek reimbursement from Cassels if, and when, Cassels recovers damages from Defendants that are duplicative of PIP benefits he has already received." (*Id.* at 11.) Under Defendants' position, if an insured elects not to pursue a tort claim against an out-of-state tortfeasor, then an

10

insurer could never recover damages from a third-party tortfeasor to recoup the PIP benefits paid

to its insured as a result of the third-party's negligence. That would mean Farm Bureau could only

recover the $771,000 in benefits it paid to Cassels if he pursued a tort claim against Defendants,

after which Farm Bureau could seek reimbursement from Cassels if Cassels recovered. But,

because Cassels chose not to pursue a tort claim against Defendants, Farm Bureau is stuck holding

the bag.

As one Michigan appellate court recognized, an insurer's "right of subrogation regarding

PIP benefits accrue[s] upon payment of PIP benefits to its insured." *Velazquez*, 703 N.W.2d at

225. In that case, State Auto—a Michigan insurer—filed suit as a subrogee against an out-of-state

automobile owner seeking to recover PIP benefits paid to its insured after the insured was injured

in a car accident. *Id.* at 224. State Auto's insured had already settled a tort claim against the same

defendants for noneconomic damages and economic damages beyond those covered by PIP

benefits State Auto paid. *Id.* at 225. But the insured's settlement did not redress the PIP benefits

State Auto already paid him. *Id.* State Auto therefore could not seek reimbursement from its

insured's settlement proceeds. *Id.* Thus, the court recognized that, notwithstanding Michigan's

no-fault statute, State Auto possessed a "right as its insured's subrogee" to pursue a claim against

the out-of-state tortfeasors. *Id.* Even though State Auto's insured "chose not to request such

damages [from the defendants] so as to relieve himself of the duty to reimburse [State Auto] out

of his recovery pursuant to M.C.L. § 500.3116, he still possessed the right to request such damages.

Therefore, plaintiff, as the insured's subrogee, also possessed the right to request such damages."[4]

---

[4] From a technical standpoint, out-of-state vehicle owners who do not participate in Michigan's no-fault insurance system are not liable to pay PIP benefits. *Id.* at 226. But they also do not "enjoy the tort immunity granted in the act." *Id.* That means that an insurer, as a subrogee, may recover compensatory damages on a negligence claim against the out-of-state tortfeasors. *Id.* Those compensatory damages would include costs covered by the PIP benefits paid to the insured, such as medical expenses and lost wages. *Id.*

*Velazquez* is persuasive and settles the question here.  Michigan's no-fault insurance statute does not prohibit an insurer from maintaining a tort action as a subrogee against an alleged tortfeasor after the insurer pays PIP benefits to its insured.

The cases Defendants cite in rebuttal do not change this conclusion.  (Defs.' Mot. at 9; Defs.' Reply at 6.)  Those cases deal with the right of reimbursement under Mich. Comp. Laws § 500.3116(2), not subrogation.  See *Villegas v. Coats*, No. 1:07-CV-331, 2008 WL 1774326, at *4 (W.D. Mich. Apr. 15, 2008) (explaining that the "right to reimbursement is between the insured plaintiffs and their [insurer], and is not directly enforceable by the tortfeasor or its [insurer]."); *Citizens Insurance Company of the Midwest v. Proben*, No. 18-13457, 2019 WL 2266738, at *2– 4 (E.D. Mich. May 28, 2019) (dismissing insurer's declaratory judgment action as premature, explaining that the right to reimbursement under Mich. Comp. Laws § 500.3116(2) kicks in "only if recovery is realized").  As discussed above, reimbursement and subrogation are different.  And the statutory right to reimbursement under Mich. Comp. Laws § 500.3116(2) does not bar subrogation.

### b.  Farm Bureau's contractual right to subrogation.

Defendants next claim that Farm Bureau's policy with Cassels limits its right to recovery only to reimbursement, not subrogation.  (Defs.' Mot. at 11.)

The interpretation of a contract is a matter of law.  *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 451 (Mich. 2003).  When interpreting an insurance contract, the contract "should be read as a whole, giving meaning to all its terms." *Steinmann v. Dillon*, 670 N.W.2d 249, 252 (Mich. 2003) (citing *Auto–Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)).

Farm Bureau's policy expressly provides both a right to reimbursement and a right to subrogation.  Part II of the policy is titled "Michigan No-Fault Coverages" and sets out a right to

12

reimbursement. (Defs' Mot., Ex 1 at PAGEID # 66, ECF No. 10-2, [hereinafter "Policy"].) Subsection (E)(1) specifies under the heading "Our Right to Recover Payment" that if Farm Bureau "make[s] a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall: . . . reimburse us to the extent of our payment[.]" (*Id.*)

Part V of the policy—titled "General Provisions"—sets out the right to subrogation. (Policy at PAGEID # 74.)  Subsection (E)(1) of Part V says: "If we make a payment or are expected to make a payment under this policy, and the person to or for whom payment was or will be made has a right to recover damages from another, we shall be subrogated to that right." (*Id.*)  Part V also contains the same right to reimbursement for any person to whom "[Farm Bureau] make[s] a payment under this policy" when that person "recovers damages from another[.]" (*Id.*)

Defendants argue that, because Part II—the "Michigan No-Fault Coverages" part of the policy—only provides a right to reimbursement and does not provide a right to subrogation, Farm Bureau has no right to subrogation for PIP benefits paid pursuant to Michigan's no-fault system. (Defs.' Reply at 4–5.) Further, they contend that, to the extent that Part II's right to reimbursement conflicts with Part V's right to subrogation, Part II controls under the canon of interpretation that the specific controls over the general. (*Id.* at 4.) Defendants' reading of the contract is flawed.

The right to subrogation in Part V applies to any payment made under the policy.  Start with where the right to subrogation is located.  It resides in the residual "General Provisions" part of the policy.  Now consider when it applies.  It applies whenever Farm Bureau "make[s] a payment or [is] expected to make a payment under this policy[.]" (Policy at PAGEID # 74.)  When Farm Bureau makes a payment pursuant to Part II of the policy—the "Michigan No-Fault

13

Coverages" part—it is still a "payment . . . under this policy." (*Id.*)  Part V does not say that it is inapplicable to payments made pursuant to Part II of the policy.

The right to subrogation in Part V also does not conflict with Part II's right to reimbursement. Both the right to reimbursement and the right to subrogation under the policy are conditional.  The right to subrogation applies only when Farm Bureau "make[s] a payment or [is] expected to make a payment" under the policy." (*Id.*)  The right to reimbursement under Part II applies only when Farm Bureau "make[s] a payment under this policy, **and** the person to or for whom payment is made **recovers damages from another**[.]"  (Policy at PAGEID # 66 (emphasis added).)  The two provisions therefore do not conflict because the right to reimbursement requires an additional condition: that the person to whom payment is made recover damages from another. To illustrate, Farm Bureau alleges that it paid its insured $771,000 under the policy and that its insured has a "right to recover damages from" Defendants.  (Compl. ¶ 17; Policy at PAGEID #74.) Farm Bureau is therefore subrogated to that right.  (Policy at PAGEID #74.)  Farm Bureau does not, however, have a right to reimbursement because its insured has not "recover[ed] damages from another[.]"  (Compl. ¶ 14; Policy at PAGEID # 66.)

In sum, reading the policy as a whole and "giving meaning to all [the policy's] terms" *Steinmann*, 670 N.W.2d at 252, Farm Bureau has a contractual right to subrogation under the policy.  Furthermore, Michigan's no-fault insurance law does not prohibit subrogation.  Farm Bureau therefore has standing to pursue this action against Defendants as a subrogee, and Defendants Karl and Schneider National's joint motion to dismiss is denied.

**B. Defendant Schneider National's Rule 12(b)(6) Motion to Dismiss**

Defendant Schneider National moves to dismiss Farm Bureau's claim for negligent training and supervision for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Schneider National

14

argues that Farm Bureau fails to plead any facts suggested a plausible right to relief on a negligent

supervision or training claim. (Defs.' Mot. at 13.) In response, Farm Bureau argues that it has

sufficiently pleaded a claim for negligent training (Pls.' Resp. at 17.) The Court agrees with

Schneider National. Farm Bureau has not sufficiently pleaded a claim for negligent training or

negligent supervision.

In Ohio, the elements of a negligent training and negligent supervision are: "(1) the

existence of an employment relationship; (2) the employee's incompetence; (3) the employer's

actual or constructive knowledge of such incompetence; (4) the employee's act or omission

causing the plaintiff's injuries; and (5) the employer's negligence in [training or supervising] the

employee as the proximate cause of plaintiff's injuries." *Sheldon v. Kettering Health Network*, 40

N.E.3d 661, 678 (Ohio Ct. App. 2015) (citing *Evans v. Ohio State Univ.*, 680 N.E.2d 161 (Ohio

Ct. App. 1996)). The elements of negligent training and negligent supervision are the same as those

required to prove negligent hiring. *Id.*

The key element, for purposes of Schneider National's motion here, is the "employer's

actual or constructive knowledge of" the employee's incompetence. *Id.* The only allegation in the

Complaint about Schneider National's alleged negligent training or supervision states that the

company "fail[ed] to properly train and/or supervise Mr. Karl as to how to pull his truck off the

road (vs. stop in the middle of it), and as to how to properly signal that his truck is stopped."

(Compl. ¶ 16.) The Complaint also alleges that Defendant Karl "did not pull over to the side, put

on his flashers, set out warning triangles, or otherwise properly indicate an ongoing emergency,

and likewise got out of his vehicle." (*Id.* ¶ 10.) These factual allegations, taken as true, might

show that Karl was incompetent. The allegations do not, however, support a finding that Schneider

15

National had "actual or constructive knowledge" of Karl's incompetence.    That is fatal to Farm Bureau's claim.

Evidence of the employee's incompetent act giving rise to the underlying negligence claim is not alone sufficient to support a finding that an employer had actual or constructive knowledge of the incompetence prior to the incident.  *See, e.g.*, *Jones v. Praxair, Inc.*, No. 3:15-CV-277, 2016 WL 3582128, at *2 (S.D. Ohio June 28, 2016) (dismissing negligent entrustment claim and holding that evidence of employee's negligent driving could not alone support the inference that the employer "knew or should have known that he was an incompetent driver.")  And the Complaint's allegation that Schneider National "fail[ed] to properly train and/or supervise" Karl is a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  There are no well-pleaded facts that, taken as true, establish Schneider National's actual or constructive knowledge of its employee's incompetence.

Farm Bureau contends that its allegations are sufficient, citing *Hejnal v. U.S. Xpress, Inc.*, No. 4:17-CV-2557 CAS, 2018 WL 534376 (E.D. Mo. Jan. 24, 2018).  (Pls.' Resp. at 19.)  But that case illustrates the key allegations Farm Bureau lacks here.  In that case, the district court denied a motion to dismiss claims for negligent hiring, negligent training, and negligent entrustment under Missouri law against a trucking company after the company's driver allegedly caused a traffic accident.  *Hejnal*, 2018 WL 534376 at *1.  The plaintiff alleged that the driver was "unqualified to safely operate a commercial motor vehicle and that she had a history of serious traffic violations and [Federal Motor Carrier Safety Regulations] violations."  *Id.* at *3.  Further, the plaintiff alleged that the trucking company failed to "instruct [the driver] on specific Federal Motor Carrier Safety Regulations, and failed to provide her with adequate continuing safety courses[.]"  *Id.* at *6.  In this case, Farm Bureau does not allege that Karl has a history of serious traffic violations or safety

16

regulations to put Schneider National on notice of Karl's incompetence prior to the accident.[5]

Farm Bureau's claim against Schneider National for negligent training and negligent supervision

must therefore be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' Joint Motion to Dismiss.  (ECF No. 10.)  Specifically, the Court **DENIES**

Defendants' joint motion under Rule 12(b)(1) and 12(b)(6) and **GRANTS** Defendant Schneider

National Carriers, Inc.'s motion to dismiss Plaintiff's negligent training and supervision claim

under Rule 12(b)(6).  Plaintiff's negligent training and supervision claim is **DISMISSED**.  This

case is to remain open.

**IT IS SO ORDERED.**

8/2/2021
DATE

s/Edmund A. Sargus, Jr.
EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Under Missouri law, negligent training does not require proof of an employer's actual or constructive knowledge of the employee's incompetence. *Hejnal v. U.S. Xpress, Inc.*, No. 4:17-CV-2557 CAS, 2018 WL 534376, at *6 (E.D. Mo. Jan. 24, 2018).  In *Hejnal*, the district court cited to the plaintiff's allegation of the driver's prior traffic and safety violations when evaluating the sufficiency of plaintiff's claim for negligent hiring, which requires proof of the employer's actual or constructive knowledge of the employee's "dangerous proclivities" under Missouri law. *Id.* at *3.  In Ohio, however, the elements of negligent training and negligent hiring are the same—and actual or constructive knowledge is one of those elements. *Sheldon*, 40 N.E.3d at 678 (citing *Ford v. Brooks*, 10th Dist. Franklin No. 11AP–664, 2012-Ohio-943, 2012 WL 760741, ¶ 22, (Ohio Ct. App. 2012)).