**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**FARM BUREAU GENERAL
INSURANCE CO. OF MICHIGAN,**

        **Plaintiff,**                **Case No. 2:20-cv-2523**
                                    **JUDGE EDMUND A. SARGUS, JR.**
    **v.**                      **Magistrate Judge Kimberly A. Jolson**

**SCHNEIDER NATIONAL
CARRIERS, INC.,** *et al.***,**

        **Defendants.**


**GREGORY P. CASSELS,** *et al.***,**

        **Plaintiffs,**             **Case No. 2:21-cv-191**
                                    **JUDGE EDMUND A. SARGUS, JR.**
    **v.**                      **Magistrate Judge Kimberly A. Jolson**

**SCHNEIDER NATIONAL
CARRIERS, INC.,** *et al.***,**

        **Defendants.**

## <u>OPINION AND ORDER</u>

This consolidated matter is before the Court on: Defendants Rodney Karl ("Mr. Karl") and

Schneider National Carriers, Inc.'s ("Schneider") Motion for Summary Judgment against Plaintiffs

Gregory Cassels, Olga Cassels, and Farm Bureau Insurance Co. of Michigan ("Farm Bureau")

(Farm Bureau Action, ECF No. 57; Cassels Action, ECF No. 58); Defendants Mr. Karl and

Schneider's Motion to Apply Ohio's Noneconomic Damages Caps (Farm Bureau Action, ECF No.

68; Cassels Action, ECF No. 70); and Defendant Glen Koons' ("Mr. Koons") Motion for Summary

Judgment & Alternatively, Motion to Apply Ohio's Noneconomic Damages Caps (Farm Bureau

Action, ECF No. 69; Cassels Action, ECF No. 71).

For the following reasons, Mr. Karl and Schneider's Motion for Summary Judgment is **GRANTED in part and DENIED in part**; Mr. Karl and Schneider's Motion to Apply Ohio's Noneconomic Damages Caps is **DENIED as moot**; and Mr. Koons' Motion for Summary Judgment & Alternatively, Motion to Apply Ohio's Noneconomic Damages Caps is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

This personal injury and subrogation action arises from the consolidation of *Farm Bureau General Insurance Co. of Michigan v. Schneider National Carriers, Inc.*, Case No. 2:20-cv-02523 (S.D. Ohio filed May 18, 2020) (the "Farm Bureau Action") and *Cassels v. Schneider National Carriers, Inc.*, Case No. 2:21-cv-00191 (S.D. Ohio filed Jan. 19, 2021) (the "Cassels Action"). Both actions stem from the same motor vehicle-pedestrian accident that occurred on May 21, 2018.

### A.    The Accident.

On May 21, 2018, at around noon on a clear day, Mr. Cassels was traveling southbound on Ohio State Route 309 in Morrow County—a two-lane, 55 miles per hour highway. (Cassels Am. Compl. ¶ 9, ECF No. 33; Traffic Crash Report, ECF No. 29-1.) While driving, Mr. Cassels observed a large roll of carpet padding lying in the northbound lane. (Cassels Dep. 26:19-27:1, ECF No. 61-1.) Mr. Cassels, recognizing that the unattended carpet padding posed a problem for northbound drivers, pulled his vehicle over to the shoulder of the southbound lane, exited his vehicle, and then walked over to the carpet pad in the northbound lane. (*Id.* at 26:19-27:5, 110:21-111:5.)

Mr. Karl, a commercial truck driver employed by Schneider, was operating a Schneider-owned tractor-trailer when, while traveling northbound on S.R. 309, he came upon Mr. Cassels

attempting to move the carpet pad out of the northbound lane. (Karl Dep. 21:6-10, 46:8-17, 52:16-21, ECF No. 61-2.) Mr. Karl brought his vehicle to a stop in front of the carpet pad. (*Id.* at 42:6-9.) He noticed two things when he came to a stop: first, Mr. Cassels was struggling to move the carpet pad, and second, there were southbound cars that had to maneuver around Mr. Cassels' parked car in order to continue on their way. (*Id.* at 62:18-24.) Less than a minute after coming to a complete stop, Mr. Karl exited his vehicle to assist Mr. Cassels, explaining that he "didn't want [Mr. Cassels] to get hit." (*Id.* at 45:3-15, 46:8-11, 62:24.)

Mr. Karl was not the only driver traveling northbound that afternoon. Mr. Koons, traveling in the same direction as Mr. Karl, observed the parked tractor-trailer and attempted to stop his pickup truck while he was still "a ways behind." (Koons Dep. 6:16-23, 13:9-12, 16:24-17:6.) But the brake line to Mr. Koons' truck broke, and he faced the following decision: go left of the tractor-trailer, go right of the tractor-trailer, or go into the tractor-trailer. (*Id.* at 13:15-17, 17:13-18:1.) Mr. Koons' first attempted to pass the tractor-trailer on the left, but he saw the headlights of a car traveling southbound. (*Id.* at 17:16-18.) He then thought about going even farther to the left, noticing a field alongside the southbound lane, but Mr. Cassels' parked vehicle blocked this route. (*Id.* at 17:18-22.) Mr. Koons ultimately decided to go to the right of the parked tractor-trailer, driving onto the shoulder of the northbound lane. (*Id.* at 17:24-18:1.) As he drove along the shoulder, Mr. Koons struck Mr. Cassels as he and Mr. Karl were moving the carpet padding in that direction. (Cassels Dep. 27:9-23, ECF No. 61-1; Karl Dep. 64:9-12, ECF No. 61-2; Koons Dep. 18:3-23, ECF No. 61-3.)

Mr. Cassels suffered severe physical injuries because of the accident. (*See* Cassels Dep. 44:2-47:2, ECF No. 61-1.) At the time of the accident, Farm Bureau insured Mr. Cassels against personal injuries such as the ones he sustained during the accident. (Farm Bureau Compl. ¶ 12,

ECF No. 1.) As of December 2022, Farm Bureau represents that it has paid Mr. Cassels approximately $1,000,000.00 in medical expenses. (*See* Farm Bureau's Opp'n to Karl & Schneider's Mot. for Summ. J. at 1, ECF No. 59.)

      **B.**    **Prior Litigation.**

Prior to the instant action, the Cassels previously sued Schneider, Mr. Karl, Mr. Koons, and Farm Bureau in the Court of Common Pleas for Richland County, Ohio, alleging negligence against Schneider, Mr. Karl, and Mr. Koons, direct liability against Schneider, uninsured/underinsured motorist claims against Farm Bureau, and loss of consortium against all Defendants. (Richland Action Compl. ¶¶ 8-35, ECF No. 10-5; *see also* Exs. 4, 5 to Karl & Schneider's Mot. Summ. J., ECF Nos. 57-4, 57-5.) This case ended with the Cassels voluntarily dismissing Farm Bureau without prejudice and ultimately dismissing the action altogether. (*Id.*)

The Cassels then sought relief in Michigan, bringing an action solely against Farm Bureau. (Ex. 6 to Karl & Schneider's Mot. Summ. J., ECF Nos. 57-6.) In the Michigan state court case, the Cassels sought uninsured/underinsured motorist benefits and a declaratory judgment that Farm Bureau failed or refused to pay some of the personal injury protection ("PIP") benefits it had a duty to pay. (*Id.*) But the Michigan court did not allow Mr. Cassels to proceed on this action; instead, the court ordered him to first exhaust the liability limits of Mr. Koons, Mr. Karl, and Schneider's insurance policies.

The Michigan case is currently stayed pending the outcome of the instant action.

### C.    Procedural History.

As a result of the May 21, 2018 motor vehicle accident described above, Farm Bureau filed the Farm Bureau Action on May 18, 2020, alleging a single count of negligence/vicarious liability against Schneider, Mr. Karl, and Mr. Koons.[1] (Farm Bureau Compl. ¶¶ 15-19, ECF No. 1.) And the Cassels, as directed by the Michigan state court, filed the Cassels Action on January 19, 2021, asserting three separate claims: (1) negligence against all Defendants (Count I); direct liability against Schneider (Count II); and (3) loss of consortium against all Defendants (Count III). (Cassels Am. Compl. ¶¶ 8-28, ECF No. 33.)  On October 18, 2021, the Court consolidated the Farm Bureau Action and the Cassels Action. (Op. & Order, ECF Nos. 36 (Farm Bureau Action), 37 (Cassels Action).)

On December 6, 2022, Mr. Karl and Schneider filed motions for summary judgment in both the Farm Bureau Action and the Cassels Action. (Karl & Schneider's Mots. Summ. J., ECF Nos. 57 (Farm Bureau Action), 58 (Cassels Action).) Farm Bureau, the Cassels, and Mr. Koons each opposed. (Farm Bureau's Opp'n to Karl & Schneider's Mot. for Summ. J., ECF No. 59; Cassels Opp'n to Karl & Schneider's Mot. for Summ. J., ECF No. 67; Koons' Opp'n to Karl & Schneider's Mot. for Summ. J., ECF Nos. 62 (Farm Bureau Action), 63 (Cassels Action).) And Mr. Karl and Schneider timely replied. (Reply to Farm Bureau's Opp'n, ECF No. 63; Reply to Koons' Opp'n, ECF Nos. 63 (Farm Bureau Action), 66 (Cassels Action); Reply to Cassels' Opp'n, ECF No. 69.)

On January 27, 2023, Mr. Karl and Schneider filed motions to apply Ohio's noneconomic damages caps in the Farm Bureau Action (ECF No. 68) and the Cassels Action (ECF No. 70). Farm Bureau and the Cassels opposed (ECF Nos. 70 (Farm Bureau Action), 75 (Cassels Action),

---

[1] In the Court's August 2, 2021 Opinion and Order, the Court dismissed Farm Bureau's claims against Schneider for negligent training and negligent supervision. (ECF No. 28 at 14-17.)

to which Mr. Karl and Schneider replied (ECF Nos. 75 (Farm Bureau Action), 78 (Cassels Action)).

On January 29, 2023, Mr. Koons moved for summary judgment and, in the alternative, an order applying Ohio's noneconomic damages caps to the consolidated action. (ECF Nos. 69 (Farm Bureau Action), 71 (Cassels Action).) Plaintiffs opposed (ECF Nos. 71 (Farm Bureau Action), 76 (Cassels Action)), to which Mr. Koons has replied (ECF Nos. 76 (Farm Bureau Action), 78 (Cassels Action)).

The above motions are fully briefed and ripe for review.

## II.     MOTIONS FOR SUMMARY JUDGMENT

Before the Court are three motions: Defendants Mr. Karl and Schneider's Motion for Summary Judgment and Motion to Apply Ohio's Noneconomic Damages Caps, and Defendant Koons' Motion for Summary Judgment & Alternatively, Motion to Apply Ohio's Noneconomic Damages Caps. Defendants' summary judgment motions ask the Court to enter summary judgment in their respective favor on all of Plaintiffs Farm Bureau and the Cassels' claims, while Defendants' motions concerning Ohio's noneconomic damages caps request a finding that (a) Plaintiffs' recovery of noneconomic damages is subject to the caps established in R.C. 2315.18 and (b) Mr. Cassels' total noneconomic damages recovery is capped at the greater of $250,000.00 or three times his economic loss. The Court will begin with Mr. Karl and Schneider's motions.

### A.  Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support

6

an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment). It is with this standard in mind that the instant motions will be decided.

### B. Defendants Mr. Karl and Schneider's Motion for Summary Judgment.

Mr. Karl and Schneider move for summary judgment on Plaintiffs' negligence claims, asserting two arguments in support of their position. First, Mr. Karl and Schneider rely on the doctrine of judicial estoppel to prevent the Cassels' from alleging their negligence, arguing that,

in the Michigan state court litigation, Mr. Cassels and his attorney took the position that Mr. Karl and Schneider bore no liability for the May 21, 2018 accident. Second, on independent and separate grounds, Mr. Karl and Schneider argue that Mr. Karl's actions at the scene of the accident entitle him to protection under Ohio's Good Samaritan statute. The Court will address each argument in turn.

### a. Judicial estoppel.

Mr. Karl and Schneider contend that, based on Mr. Cassels' litigation conduct in the Michigan state court, judicial estoppel bars the Cassels' negligence claims. The Court disagrees.

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). Undergirding this doctrine is the interest in protecting "the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) (quoting *Browning*, 283 F.3d at 776). To that end, courts generally apply judicial estoppel only where "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)); *accord Teledyne*, 911 F.2d at 1218.

To assess the applicability of judicial estoppel to the Cassels' negligence claims, the Court turns to the record developed by the 7th Judicial Circuit Court for the County of Genesee,

Michigan, in *Cassels v. Farm Bureau Gen. Ins. Co. of Mich*, No. 2019-112760-NI, (7th Judicial Circuit Court filed May 20, 2019). There, Mr. Cassels sought uninsured/underinsured motorist ("UM/UIM") benefits and a declaratory judgment that Farm Bureau failed or refused to pay some of the PIP benefits it had a duty to pay pursuant to their insurance contract. Farm Bureau moved for partial summary judgment, advancing two arguments relevant to the instant action: (1) Mr. Cassels does not have a valid claim for UIM coverage under the Farm Bureau policy because the combined liability limits of the policies of Mr. Koons, Mr. Karl, and Schneider exceed the $500,000 UIM coverage limit of the Farm Bureau policy; and (2) even if Mr. Cassels had a valid claim for UIM coverage under his policy with Farm Bureau, his lawsuit was premature because he had not yet exhausted the liability limits of Defendants' policies through judgment or settlement. (Ex. 7 to Karl & Schneider Mot. Summ. J. ¶¶ 6-9, ECF No. 57-7.)

Of particular importance to this dispute is the "Setoff" provision of Mr. Cassels' policy with Farm Bureau, which reads in pertinent part:

> The amount payable for this Uninsured Motorists Coverage will be reduced by any amounts paid or **payable** for the same bodily injury: . . . by or on behalf of any person or organization who may be legally liable for the bodily injury to the extent of any insurance applicable . . . .

(Ex. 10 to Karl & Schneider Mot. Summ. J. at 9-10, ECF No. 57-10 (emphasis added).) As this provision applies to Mr. Cassels' case, the $500,000 payable to him by Farm Bureau would be reduced by the amount of $3,100,000 (Mr. Karl and Schneider's liability limits) paid or payable if Mr. Karl and Schneider are legally liable for Plaintiff's injuries. (*Id.* at 10.) Thus, in his opposition to Farm Bureau's motion, Mr. Cassels argued that Farm Bureau could not reduce the UIM coverage to which it owes him based on Mr. Karl and Schneider's policies because they bore no liability for his injuries. (Hearing Transcript 16:19-17:3, Ex. 9 to Karl & Schneider Mot. Summ. J., ECF No. 57-9.)

9

The question before the Michigan court, then, was the meaning of the term "payable," and whether the term encompassed Mr. Karl and Schneider's liability limits. The Honorable Judge Brian S. Pickell began answering the first question by rejecting any suggestion that Mr. Karl and Schneider's policies could set off Farm Bureau's UM/UIM obligations in the absence of any legal liability. (*Id.* at 10 ("Otherwise, they could be 'on the hook' even if they were in no way legally liable for Plaintiff's injuries.").) Judge Pickell then considered "the evidence in the light most favorable" to Mr. Cassels, noting that the traffic-crash report indicated that Mr. Karl and Schneider were not at fault for the accident. (*Id.*)

The court's analysis continued. Finding the term "payable" ambiguous, Judge Pickell turned to an unpublished decision, which defined "payable" as "that may, can or must be paid." (*Id.* at 11 (quoting *Farm Bureau General Ins Co. of Michigan v Hare*, unpublished per curium opinion of the Court of Appeals, entered [August 20, 2015] (Docket Nos. 320710 and 320711).) Noting that the *Hare* decision provided the court with useful guidance, Judge Pickell explained that the at-fault driver's insurer (GEICO) admitted that it lacked any defense for its insured and agreed to tender the entire liability limits of its policy to the six injured people; "Thus, the GEICO policy limits were 'payable' to [the six injured people]." (*Id.*)

Judge Pickell then concluded that Mr. Karl and Schneider's liability limits were not currently payable to Mr. Cassels:

> This Court construes ambiguous language of the subject policy against [Farm Bureau] and resolves ambiguities therein in favor of coverage. When doing so, this Court finds that, at the least, Mr. Karl and Schneider National Carriers have defenses available to them regarding whether they were at fault for the accident, and they have neither offered nor tendered any amount of their collective liability limits to Plaintiff. Therefore, no amount of their collective liability limits is currently payable to Plaintiff.

(*Id.*) That is to say, the $500,000 payable to Mr. Cassels by Farm Bureau could not be reduced by Mr. Karl and Schneider's liability limits because those liability limits were not "currently payable" to Mr. Cassels.

The above finding, however, was just one of several that the court made. Rather than allowing Mr. Cassels to proceed with his UIM claims solely against Farm Bureau, the court instead ordered Mr. Cassels to exhaust the liability limits of Mr. Koons, Mr. Karl, and Schneider's insurance policies as a precondition to pursuing his action for UIM coverage against Farm Bureau. (*Id.* at 12 ("Plaintiff can bring no action for UIM coverage by way of suit against Defendant until after the corresponding limits of liability under *all* of the other insurance policies that applied at the time of the accident have been exhausted by payment of judgments or settlements.") (emphasis added).)

Returning from the 7th Judicial Circuit Court of Genessee County to the Southern District of Ohio, Mr. Karl and Schneider argue that, based on the Michigan decision discussed above, the doctrine of judicial estoppel bars the Cassels from arguing before this Court that Mr. Karl and Schneider were negligent. More precisely, they assert that the Michigan court accepted Mr. Cassels' position on Mr. Karl and Schneider's non-liability for the accident, and now, here in this Court, the Cassels take the inconsistent position that Mr. Karl and Schneider *are* negligent for the accident.

But Mr. Karl and Schneider misread the scope of the Michigan court's conclusions of law. Whereas Mr. Karl and Schneider characterize the court's decision as finding an absence of liability on their part, the opinion and order speaks only to the reach of the term "payable," finding Mr. Karl and Schneider's policies not "currently payable" when construing the ambiguous policy language against Farm Bureau. The court did not root this finding in Mr. Karl and Schneider's

11

non-liability; rather, the court relied on (1) the *defenses* available to them regarding whether they were at fault for the accident, and (2) the undisputed fact that they have neither offered nor tendered any amount of their collective liability limits to Mr. Cassels. (*See id.* at 11.) Critically, the court made no determination of the comparative fault of Defendants, as the court reiterated in its July 27, 2020 order:

> Plaintiff is not entitled to recover UM/UIM benefits from [Farm Bureau] until there has been a determination of the comparative fault of Mr. Koons, Mr. Karl, Schneider Transportation, Plaintiff, and any "John Doe." And, this Court does not have personal jurisdiction over any of them. Thus, as a condition precedent to recovery for Plaintiff in this matter, **Plaintiff must first have a factual fault determination in the federal lawsuit. (It may be that [Farm Bureau] is not required to pay for the alleged negligence of Mr. Koons, Mr. Karl, and Schneider Transportation since they were all insured.)**

(July 27, 2020 Order at 7, ECF No. 12-1 (emphasis added).)

The Michigan court recognized that: (1) it did not allocate any shares of liability for the accident, and (2) Defendants, including Mr. Karl and Schneider, could be subject to liability for their roles in the accident. Thus, the Michigan court did *not* adopt Mr. Cassels' now-contrary position concerning Mr. Karl and Schneider's negligence, proving fatal to their judicial estoppel argument. *See, e.g.*, *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("The doctrine of judicial estoppel applies to a party who has *successfully* . . . asserted a position in a prior proceeding.") (emphasis added); *see also City of Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974) (success in prior proceeding necessary). Because the Michigan court did not adopt Mr. Cassels' position on the non-liability of Mr. Karl and Schneider—*i.e.*, because Mr. Cassels did not successfully assert this position before the Michigan court—this Court therefore **DENIES** Mr. Karl and Schneider's Motion for Summary Judgment as it pertains to the application of judicial estoppel as a bar to the Cassels' negligence claims.

**b. Ohio's Good Samaritan Doctrine.**

Mr. Karl and Schneider next argue that Mr. Karl's actions at the scene of the accident, if determined to be negligent, nevertheless fall within the scope of R.C. 2305.23—Ohio's Good Samaritan statute. In pertinent part, the statute provides:

> No person shall be liable in civil damages for **administering emergency care** or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct.
>
> Nothing in this section applies to the administering of such care or treatment where the same is rendered for remuneration, or with the expectation of remuneration, from the recipient of such care or treatment or someone on his behalf.

Ohio Rev. Code § 2305.23 (emphasis added).

Under this statute, the argument goes, Mr. Karl and Schneider are immune from any liability because Mr. Karl encountered an emergency that required immediate action (*i.e.*, Mr. Cassels standing in the middle of a highway, struggling to move a large roll of carpet padding as cars passed him by), and he acted promptly in administering emergency care at the scene of an emergency—*i.e.*, he quickly moved to get Mr. Cassels out of harm's way (that is, shortly after stopping in front of the carpet roll, Mr. Karl exited his vehicle and assisted Mr. Cassels with the removal of the carpet roll from the highway). Further, Mr. Karl and Schneider assert that there is no evidence, nor any allegation, that Mr. Karl's actions constitute willful or wanton misconduct, which would remove his conduct from the statute's protection.

Farm Bureau, the Cassels, and Mr. Koons all challenge the applicability of R.C. 2305.23 to the instant case, collectively raising five arguments: (1) R.C. 2305.23 applies only to negligence in the administering of aid to an already-injured person, which Mr. Cassels was not; (2) Mr. Karl's negligence constituted negligent *omissions*—not acts—thus falling outside the scope of R.C. 2305.23; (3) Mr. Cassels' presence on the roadway did not constitute an "emergency," as required

to trigger the protections of R.C. 2305.23; (4) Mr. Karl's negligence, such as parking in the middle of the highway and failing to place safety triangles or light a road flare, occurred *before* he was administering any supposed emergency care; and (5) Mr. Karl was acting in his own self-interest in removing the carpet roll off the road, rendering R.C. 2305.23 inapplicable. The Court will address each argument in turn.

### i. R.C. 2305.23 does not only apply to negligence in the administering of aid to an already-injured person.

The first argument against the applicability of Ohio's Good Samaritan statute—that it applies only to the negligent administering of emergency care or treatment to an already-injured person—directly conflicts with Ohio precedent. In *Carter v. Reese*, the Supreme Court of Ohio applied R.C. 2305.23 to a passerby at a loading dock who came upon a truck driver with his leg trapped between the dock and a tractor-trailer. 70 N.E.3d 478, 480 (Ohio 2016). Although trapped, the driver was in no physical pain. *Id.* The trapped driver asked the passerby to move his truck forward, and in doing so, the passerby inadvertently rolled the tractor-trailer backwards, severely injuring the driver's leg. *Id.* The trial court entered summary judgment in favor of the passerby pursuant to Ohio's Good Samaritan statute, which both the appellate court and the Supreme Court of Ohio affirmed. *Id.*

In light of *Carter*, which demonstrates that R.C. 2305.23 may shield a Good Samaritan from civil liability when administering emergency care to a yet-uninjured person, the Court rejects this first challenge to Mr. Karl and Schneider's reliance on the statute in the instant action.

### ii. R.C. 2305.23 covers both negligent acts and omissions.

The second argument against applying Ohio's Good Samaritan statute to the present facts also falls short—that is, R.C. 2305.23 includes negligent acts *and* omissions within its scope. This argument is premised on the fact that R.C. 2305.23 immunizes people from liability "for *acts*

performed at the scene of such emergency, unless such *acts* constitute willful or wanton misconduct." Ohio Rev. Code § 2305.23 (emphasis added). Thus, because the statute does not place "omissions" alongside "acts," any negligent omissions are therefore excluded from the statute's protection. With this interpretation in mind, Mr. Karl's failure to (1) pull over to the side of S.R. 309, (2) put on his hazard lights, (3) place safety triangles behind the tractor-trailer, and (4) light a road flare all would constitute negligent omissions falling outside the reach of R.C. 2305.23. In support of this argument, the Cassels do not cite any Ohio caselaw applying such an interpretation to the statute; instead, the Cassels direct the Court's attention to several Good Samaritan statutes from other states, which explicitly cover both "acts" and "omissions." (*See* Cassels Opp'n to Karl & Schneider's Mot. for Summ. J. at 6-7, ECF No. 67.)

The Court is not persuaded. The Supreme Court of Ohio confirmed that R.C. 2305.23 "precludes liability for any acts performed at the scene of an emergency." *Carter*, 70 N.E.3d at 488. However, if the party alleging negligence can simply reframe the other party's allegedly negligent acts as negligent omissions, thus escaping the reach of the Good Samaritan statute, then the statute would no longer shield Good Samaritans from civil liability. Indeed, a party may easily engage in such a reframing effort given that negligence, by definition, is essentially the *omission* of the exercise of reasonable care. *See Cleveland Metro. Bar Ass'n v. Berk*, 969 N.E.2d 256, 258 (Ohio 2012) ("[N]egligence is defined as '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'" (quoting *Black's Law Dictionary* 1133 (9th Ed.2009)).

Moreover, accepting this strained interpretation of R.C. 2305.23 would effectively negate the string of affirmative acts that Mr. Karl undertook when he attempted to assist Mr. Cassels. That is, despite the potentially negligent acts Mr. Karl engaged in when purportedly administering

emergency care (*e.g.*, parking the tractor-trailer in the highway and exiting the vehicle to help Mr. Cassels), so long as he also failed to do something that a supposed reasonably prudent person would have done in a similar situation (*e.g.,* pull off to the side of the road or place safety triangles), then he cannot rely on the protection of R.C. 2305.23. The Supreme Court of Ohio did not apply this interpretation in *Carter*, nor has the Court found any Ohio case making such an act-versus-omission distinction when applying R.C. 2305.23. As such, the Court will not do so here.

### iii.  There was an emergency.

The parties dispute whether Mr. Cassels' presence on S.R. 309 constituted an "emergency" within the scope of R.C. 2305.23. Reprinted for convenience, R.C. 2305.23 provides, in relevant part:

> No person shall be liable in civil damages for administering **emergency** care or treatment at the scene of an **emergency** outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such **emergency**, unless such acts constitute willful or wanton misconduct.

Ohio Rev. Code § 2305.23 (emphasis added).

In *Carter*, the Supreme Court of Ohio defined "emergency" as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." 70 N.E.3d at 487. In crafting this definition, the court cited approvingly to the *Shorter Oxford Dictionary* definition of "emergency," which defined the term as "[a] situation, esp. of danger or conflict, that arises unexpectedly and requires urgent action," as well as Utah's Good Samaritan law, defining "emergency" to mean "an unexpected occurrence involving injury, threat of injury, or illness to a person or the public, including motor vehicle accidents, disasters, actual or threatened discharges, removal or disposal of hazardous materials, and other accidents or events of a similar nature." *Id.* Utilizing this definition of "emergency," the court held in *Carter* that the truck driver's slip on the loading dock, resulting in the trapping of his leg between the dock and a tractor-trailer, "constituted

an 'emergency' for purposes of R.C. 2305.23," notwithstanding the fact that he was neither in physical pain nor in danger. *Id.* at 480, 489; *see also Carter v. Reese*, 25 N.E.3d 1086, 1092 (Ohio Ct. App. 2014) (noting that the driver asserted he was "merely 'trapped,' 'unharmed,' between his stopped semi-truck and the wall of the loading dock when [the passerby] attempted to move the truck").

Mr. Karl and Schneider argue that Mr. Karl came upon the scene of two emergencies: (1) the presence of the large carpet roll obstructing traffic in the northbound lane of S.R. 309, and (2) Mr. Cassels' struggle moving the carpet roll while standing in the northbound lane with oncoming cars driving by. (Reply to Cassels' Opp'n at 7, ECF No. 69.) The Cassels challenge Mr. Karl and Schneider's labeling of the pre-accident scene as an "emergency," arguing that the circumstances did not "call[] for immediate action" because, when Mr. Karl parked the tractor-trailer, southbound traffic was able to pass in the southbound lane and the Schneider tractor-trailer blocked northbound traffic, creating a zone in which Mr. Cassels was free from danger. (Cassels Opp'n to Karl & Schneider's Mot. for Summ. J. at 7, ECF No. 67.)

The Court recognizes that the question of whether an emergency exists, at least in some cases, is a question reserved for the jury. *See, e.g.*, *Shepard v. Dunn*, 1988 Ohio App. LEXIS 1017, at *6 (Ohio Ct. App. 1988) ("If evidence had been introduced which would enable reasonable minds to conclude that an emergency existed it would then become a question of fact for the jury to decide."); *Dayton v. Brennan*, 112 N.E.2d 837 (M.C. 1952). But when the relevant facts are undisputed, the issue becomes one that the court may properly determine. *See Carter*, 70 N.E.3d at 489 (finding as a matter of law that the "uncontested facts" gave rise to an "emergency" within the meaning of R.C. 2305.23); *Helvich v. George A. Rutherford Co.*, 114 N.E.2d 514, 518, (Ohio

Ct. App. 1953) ("Whether or not the plaintiff was acting in an emergency is ordinarily a question of fact, but where the facts are not in dispute, it becomes a question of law for the court.").

Here, based on the undisputed facts, the Court finds that Mr. Cassels' presence on the northbound lane of S.R. 309, in which he was struggling to remove the large carpet roll from the roadway as southbound traffic passed him by, constituted an "emergency" for purposes of R.C. 2305.23. Bearing in mind the Supreme Court of Ohio's definition of "emergency" under R.C. 2305.23, the facts before this Court are even more indicative of an emergency than those in *Carter.* Unlike the truck driver in *Carter*, who was merely "inconvenienced," *see Carter*, 70 N.E.3d at 496 (Pfeifer, J., dissenting), Mr. Cassels was struggling to move the carpet roll as he stood in the northbound lane with southbound traffic subject to a 55-mph speed limit passing him by. Also, unlike the truck driver in *Carter*, whose situation was not at imminent risk of worsening, Mr. Cassels' mere presence in the northbound lane exposed him to a substantial threat of injury (which ultimately came to pass). By promptly exiting the tractor-trailer to assist Mr. Cassels, Mr. Karl sought to reduce the risk that a vehicle would hit him. That is to say, Mr. Karl's assistance would reduce the amount of time Mr. Cassels spent exposed on the highway, thus decreasing the likelihood that he would be involved in a motor vehicle-pedestrian accident. Under these uncontested facts, then, Mr. Cassels' presence on S.R. 309's northbound lane created "an unforeseen combination of circumstances" calling for "immediate action," and thus constituted an "emergency" within the scope of R.C. 2305.23.

### iv. Mr. Karl's alleged negligence did not occur before R.C. 2305.23. triggered.

The parties also dispute whether Mr. Karl's alleged negligence (*e.g.*, parking in the middle of the northbound lane and failing to place safety triangles behind the tractor-trailer) occurred before R.C. 2305.23's protections came into play. In support of the argument that Mr. Karl's

alleged negligence occurred before the triggering of R.C. 2305.23, Farm Bureau and the Cassels focus on the following prepositional phrase from the statute: "No person shall be liable in civil damages *for administering emergency care or treatment* at the scene of an emergency . . . ." (*See* Farm Bureau's Opp'n to Karl & Schneider's Mot. for Summ. J. at 9-11, ECF No. 59; Cassels Opp'n to Karl & Schneider's Mot. for Summ. J. at 6, ECF No. 67.) According to the Plaintiffs, because this language protects a Good Samaritan only from liability for negligent emergency care or treatment, Mr. Karl's allegedly negligent acts occurring prior to his assistance in removing the carpet roll from the highway fall outside R.C. 2305.23.

The Court disagrees. While Plaintiffs focus exclusively on the first prepositional phrase contained in R.C. 2305.23, they fail to consider the statute's second prepositional phrase: "No person shall be liable in civil damages . . . *for acts performed at the scene of such emergency*." Ohio Rev. Code § 2305.23. As the Supreme Court of Ohio explained in *Carter*, this "latter prepositional phrase . . . precludes liability for any acts performed at the scene of an emergency . . . ." 70 N.E.3d at 488. Accordingly, the Court finds that Mr. Karl's alleged negligence occurred at the scene of the emergency, and therefore falls within R.C. 2305.23's coverage.

**v. R.C. 2305.23 contains no element of subjective intent.**

The final argument against the application of Ohio's Good Samaritan statute, raised by Mr. Koons, asserts, without evidence, that Mr. Karl was on a "tight schedule" on the day of the accident, and his desire to stay on schedule drove him to assist Mr. Cassels. (Koons' Opp'n to Karl & Schneider's Mot. for Summ. J. at 3-5, ECF Nos. 62 (Farm Bureau Action).) In essence, Mr. Koons argues that Mr. Karl was acting in his own self-interest when he assisted Mr. Cassels, stripping him of R.C. 2305.23's protection. In making this argument, Mr. Koons concedes that

R.C. 2305.23 contains no element concerning the Good Samaritan's subjective motivations. (*Id.* at 3.)

Mr. Koons is correct—R.C. 2305.23 says nothing about the intent of the Good Samaritan— and the Court will not rewrite the statute to say otherwise. But not only is Mr. Koons' argument inconsistent with the language of the statute, it also lacks support in the caselaw. Mr. Koons relies on three Ohio cases in his opposition brief, including *Carter*, but none of his cited cases involve a court grafting a subjective element onto R.C. 2305.23.[2] This Court will not break the trend.

In sum, the Court finds that Mr. Karl's actions meet all the requirements of R.C. 2305.23. The undisputed facts of this case show that Mr. Karl performed acts at the scene of an emergency that constituted "administering emergency care" to Mr. Cassels.[3] Mr. Cassels' presence on the northbound lane of S.R. 309, in which he was struggling to remove the large carpet roll from the roadway as southbound traffic passed him by, constituted an "emergency" for purposes of R.C. 2305.23. In responding, Mr. Karl parked the tractor-trailer and promptly exited the vehicle to administer care by helping Mr. Cassels move the carpet roll off the highway. And there is no allegation that Mr. Karl's conduct was willful or wanton. Accordingly, R.C. 2305.23 applies to Mr. Karl, and both he and his employer, Schneider, are not liable in civil damages to the Cassels or their subrogee, Farm Bureau. The Court therefore **GRANTS** Mr. Karl and Schneider's Motion for Summary Judgment based on Ohio's Good Samaritan statute.

---

[2] Mr. Koons cites the following cases: *Carter v. Reese*, 70 N.E.3d 478 (Ohio 2016); *Held v. Rocky River*, 516 N.E.2d 1272 (Ohio Ct. App. 1986); and *Wallace v. Hall*, 244 S.E.2d 129 (Ga. 1978). The two Ohio cases do not consider the Good Samaritan's motives. And while the Georgia court does acknowledge that a person rendering emergency care must act in "good faith," this good-faith requirement is set forth directly in Georgia's Good Samaritan statute. *See Wallace*, 244 S.E.2d at 130.

[3] The parties do not dispute whether Mr. Karl's assistance with the carpet roll's removal qualifies as "administering emergency care" under R.C. 2305.23; nor should they. In *Carter*, the Supreme Court of Ohio explained that "the General Assembly intended for the phrase 'administering emergency care' to broadly include nonmedical care," and concluded that Ohio's statute "broadly appl[ies] to any type of assistance given at the scene of an emergency." 70 N.E.3d at 488–89.

### C. Mr. Koons' Motion for Summary Judgment.

Mr. Koons also moves for summary judgment, arguing that Plaintiffs have failed to disclose any medical expert on the issue of causation, thus dooming their claims. (ECF No. 69 at 4-5 (Farm Bureau Action); ECF No. 71 at 4-5 (Cassels Action).) And in the alternative, Mr. Koons asks the Court to find that the Cassels' recovery against Mr. Koons is subject to R.C. 2315.18(B)(2)—Ohio's noneconomic damages caps. (ECF No. 69 at 6-7 (Farm Bureau Action); ECF No. 71 at 6-7 (Cassels Action).) The Court will address each argument in turn.

#### a.  Plaintiffs' failure to disclose expert witnesses.

Mr. Koons' motion asserts that Plaintiffs have not produced any expert medical disclosures, and therefore they cannot establish a causal connection between Mr. Cassels' injuries and the May 21, 2018 accident. In making this argument, Mr. Koons' accurately notes that this Court ordered Plaintiffs to disclose their primary experts by September 9, 2022, which the Cassels—but not Farm Bureau—failed to do. (*See* Order on Mot. for Extension of Time, ECF No. 54 (Farm Bureau Action).)

> In response, the Cassels contend that they:
>
> have disclosed all of the health care providers, including physicians, for Greg Cassels. (*See, e.g.*, Interrogatory Response No. 17, Document Requests No. 5 & 6, attached hereto as Exhibit 3.) Plaintiffs do not need to identify and provide retained experts because treating physicians are permitted to testify and provide expert opinions based on their medical records. *See* FRCP 26(a)(2)(C). In addition, Plaintiffs are entitled to rely on the expert opinions disclosed by Farm Bureau in the consolidated case.

(ECF No. 76 at 7.)

Under Rule 26(a)(2), which governs the disclosure of expert testimony, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Under Rule 26(a)(2)(B),

the expert must provide a written report if the expert was "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony;" and, under Rule 26(a)(2)(C), any expert who does not need to provide a written report under Rule 26(a)(2)(B), must provide a disclosure stating:

> (i)    the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

> (ii)   a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P 26(a)(2)(B)-(C). Thus, while treating physicians are not subject to Rule 26(a)(2)(B)'s written-report requirement, they "must still provide the disclosures outlined in Rule 26(a)(2)(C)." *Bush v. O'Reilly Auto Enters., LLC*, No. 3:21-cv-189, 2022 U.S. Dist. LEXIS 201094, at *4 (S.D. Ohio Nov. 3, 2022).

Here, the Cassels have no colorable basis to argue that they have complied with Rule 26(a)(2)(C). In support of their compliance, the Cassels cite only to their response to Mr. Karl and Schneider's interrogatory number 17, which simply provides a non-exhaustive list of physicians who treated Mr. Cassels. (*See* ECF No. 76-3.) The list does not, however, provide "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705," nor does it summarize "the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C).

As a remedy for the Cassels' failure to comply with Rule 26(a)(2)(C), the Court may exclude the opinion testimony unless the Cassels establish that the insufficiency in their disclosures was either substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless

the failure was substantially justified or is harmless."); *see also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) ("[T]he sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.").

The Cassels provide no justification for their failure to provide expert disclosures under Rule 26(a)(2)(C), nor do they suggest that permitting them to skirt the Federal Rules' disclosure requirements would be harmless to Mr. Koons. Given the absence of *any* argument on this matter, the Court excludes all expert opinion testimony of Mr. Cassels' treating physicians pursuant to Rule 37(c)(1).

But this holding is not fatal to the Cassels' claims. Assuming—without deciding—that the Cassels' must present expert testimony on the issue of causation, the Court finds that they may rely on the expert opinions that Farm Bureau timely disclosed.[4] Although the Cassels first disclosed their intent to utilize Farm Bureau's experts in their opposition to Mr. Koons, more than five months after the disclosure deadline, the Court finds that permitting their use would be harmless—and therefore unsanctionable under Rule 37(c)(1).[5]

In the typical case where exclusion is justified under Rule 37(c)(1), opposing counsel either had no advance knowledge that the expert witness would testify or no knowledge of the substance of the expert's reports. *Broughton v. Shoe Show, Inc.*, No. 1:20-cv-261, 2022 U.S. Dist. LEXIS

---

[4] Farm Bureau has not indicated any opposition to sharing its experts with the Cassels. Indeed, Farm Bureau's response to Mr. Koons' motion appears to contemplate this arrangement. (*See* ECF No. 71 at 2-3 (in rejecting Mr. Koons' failure-to-disclose argument, Farm Bureau noted that the Cassels "did not submit any *further* medical expert reports *apart from Farm Bureau's*") (emphasis added).)

[5] To the extent the Cassels' untimely disclosure conflicts with this case's scheduling order, the Court notes that, pursuant to Federal Rule of Civil Procedure 16, the Court has broad discretion over whether to exclude untimely disclosed expert testimony. *See Pride v. BIC Corp.*, 218 F.3d 566, 578–79 (6th Cir. 2000); *see also Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 752 (6th Cir. 2003) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders.").

176455, at *14 (S.D. Ohio Sept. 26, 2022) (citing *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003)). But this is not the typical case. First, Mr. Koons does not genuinely dispute that Farm Bureau timely produced its expert medical reports on August 25, 2021—well before the disclosure deadline, thus demonstrating that he had advance knowledge that these experts were slated to testify. Nor does Mr. Koons argue that he is in the dark as to the substance of the experts' reports. Indeed, Mr. Koons appears to welcome the Cassels' reliance on Farm Bureau's experts, citing several excerpts from their reports indicating that Mr. Cassels' injuries are less severe than he alleges. (*See* Reply to Cassels' Opp'n at 3-4, ECF No. 78.).

Additionally, on April 26, 2023, the parties submitted a joint status report stating that they met and conferred on Farm Bureau's expert deposition notices, reaching an agreement on an acceptable deposition schedule for each expert witness. (*See* Joint Status Rep., ECF Nos. 89 (Farm Bureau Action), 88 (Cassels Action).) Given this agreed-upon schedule, permitting the Cassels' to rely on Farm Bureau's experts would not disrupt the flow of this litigation, thereby minimizing any potential prejudice toward Mr. Koons. As such, the Court concludes that the Cassels may use Farm Bureau's expert witnesses in proving causation, as their failure to timely disclose their intent is relatively harmless.

### b. Applicability of Ohio's noneconomic damages caps.

Mr. Koons' Motion for Summary Judgment also asks the Court to find that Ohio's cap on noneconomic damages applies to the Cassels' claims. (ECF No. 69 at 6-7.) The Court finds that this is a question of fact reserved for the jury.

R.C. 2315.18 sets forth the basic framework for the imposition of damages in certain tort actions. *See* Ohio Rev. Code § 2315.18. Of particular relevance to the instant action is R.C. 2315.18(B), which limits a plaintiff's recovery for noneconomic loss to the greater of (1) $250,000

24

or (2) three times the economic damages up to a maximum of $ 350,000, or $ 500,000 per single occurrence. *Id.* at § 2315.18(B)(2). There are, however, exceptions to this limit. The noneconomic damages cap does not apply if the plaintiff suffered "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system," or "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." *Id.* at § 2315.18(B)(3)(a)-(b).

Regarding Ohio's noneconomic damages caps, Mr. Koons' motion focuses exclusively on the exception articulated in § 2315.18(B)(3)(b)—that the plaintiff suffer a "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." Mr. Koons argues that while a plaintiff "must present objective evidence that his or her physical functional injury is permanent," Mr. Cassels has failed to do so. (ECF No. 69 at 6 (citing *Dillon v. Ohiohealth Corp.*, 2013 Ohio Misc. LEXIS 16351 (Ohio C.P. 2013).)

In response, the Cassels focus on the exception set forth in § 2315.18(B)(3)(a), which removes the statutory limits for a plaintiff who has suffered a "permanent and substantial physical deformity." (ECF No. 76 at 4-6.) In their opposition, the Cassels include excerpts from Mr. Cassels' deposition detailing his injuries. (*Id.* at 2-3 (noting, among other injuries, that Mr. Cassels has a scar stretching 14-16 centimeters due to the surgery following his type V tibia plateau fracture and the toes on his left foot have curled up from nerve damage).[6] According to the Cassels, such

---

[6] The Court need not rely solely on Mr. Cassels' testimony as evidence on this issue. Each of Farm Bureau's experts opine on the types of injuries Mr. Cassels sustained arising from the May 21, 2018 accident. (*See* Farm Bureau's Opp'n to Karl & Schneider's Mot. Apply Ohio's Noneconomic Damages Caps at 2, ECF No. 71 (briefly summarizing expert reports).) For example, two of Farm Bureau's expert reports confirm the presence of Mr. Cassels' scar, though one of the experts, Dr. Drouillard, D.O., reports that Mr. Cassels' scar is approximately 10 inches (rather than 14-16 inches, as Mr. Cassels testified). (*See* Drouillard Rep., ECF No. 68-1; Gross Rep., ECF No. 68-1.)

scarring is sufficient to deny a motion for summary judgment as to the application of Ohio's noneconomic damages caps. The Court agrees.

Ample caselaw interpreting R.C. 2315.18(B)(3)(a) has found the presence of scarring sufficient for submission to a jury to determine whether it constitutes "permanent and substantial physical deformity." *See Torres v. Concrete Designs Inc.*, 134 N.E.3d 903, 924–26 (Ohio Ct. App. 2019) (well-healed facial scar sufficient to create a factual question for the jury); *Cawley v. Eastman Outdoors, Inc.*, No. 1:14-CV-00310, 2014 U.S. Dist. LEXIS 148194, *at 2–3, 19–20 (N.D. Ohio Oct. 17, 2014) (jury question whether scarring on plaintiff's left hand and thumb following an archery accident constituted a "[p]ermanent and substantial physical deformity"); *Ohle v. DJO, Inc.*, No. 1:09-cv-02794, 2012 U.S. Dist. LEXIS 140020 (N.D. Ohio Sept. 28, 2012) (leaving for the jury to decide whether plaintiff's combination of scarring, destroyed cartilage, and bone replacement qualified as a permanent and substantial physical deformity); *Bransteter v. Moore*, No. 3:09-CV-2, 2009 U.S. Dist. LEXIS 6692 at *6–7  (N.D. Ohio 2009) (issue of whether perforated bowel and surgical scar qualified as deformity submitted to the jury, stating that "scarring may be so severe as to qualify as a serious disfigurement" ).

Here, the Court concludes that the jury is in the best position to determine whether Mr. Cassels' injuries qualify as a "permanent and substantial physical injury" under R.C. 2315.18(B)(3)(a). When reasonable minds might disagree about the nature of a plaintiff's injuries, the Court must not impose its own factual determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court therefore **DENIES** Mr. Koons' request to impose a damages cap at this stage.

### III.    CONCLUSION

For the reasons stated herein, the Court **ORDERS** as follows:

- Mr. Karl and Schneider's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. (Farm Bureau Action, ECF No. 57; Cassels Action, ECF No. 58.) The motion is **DENIED** as it pertains to the issue of judicial estoppel and **GRANTED** based on Ohio's Good Samaritan statute. Mr. Karl and Schneider are **DISMISSED with prejudice** from this action;

- Mr. Koons' Motion for Summary Judgment & Alternatively, Motion to Apply Ohio's Noneconomic Damages Caps is **GRANTED in part and DENIED in part**. (Farm Bureau Action, ECF No. 69; Cassels Action, ECF No. 71.) The motion is **GRANTED** to the extent that Mr. Koons asserts that Mr. Cassels' cannot use his treating physicians to provide expert testimony. The motion is **DENIED** as to Mr. Koons' assertion that the Cassels may not use Farm Bureau's experts and the applicability of Ohio's noneconomic damages caps to this action;

- Mr. Karl and Schneider's Motion to Apply Ohio's Noneconomic Damages Caps is **DENIED as moot**. (Farm Bureau Action, ECF No. 68; Cassels Action, ECF No. 70.)

  This case remains open.

  **IT IS SO ORDERED**.

**6/21/2023**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**